

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD LYNCH and VIENNA RYE,

                         Plaintiffs,

          - v. -

THE CITY OF NEW YORK; POLICE
OFFICER JONMICHAEL DELAROSA,
Shield No. 17441; POLICE
OFFICER MARIANN MANDY, Shield
No. 00603; DEPUTY INSPECTOR
ANDREW LOMBARDO; NYPD LEGAL
BUREAU AGENCY ATTORNEY LESTER
PAVERMAN,

                         Defendants.

16 Civ. 7355 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

     This is a civil rights action brought by Plaintiffs Richard

Lynch ("Lynch") and Vienna Rye ("Rye") against Defendants City

of New York ("City"), Police Officers Jonmichael Delarosa

("Delarosa"), Mariann Mandy ("Mandy"), Deputy Inspector Andrew

Lombardo ("Lombardo"), and Agency Attorney Lester Paverman

("Paverman") seeking relief for Defendants' alleged violation of

Plaintiffs' rights pursuant to the Civil Rights Act of 1871, 42

U.S.C. § 1983.   (See Amended Compl. ("Am. Compl."), Mar. 6, 2017

[dkt. no. 18].)   The Am. Compl. asserts federal and state

violations, including, inter alia, false arrest, malicious

prosecution, violations of the right to free speech and equal

protection, negligence, and municipal liability against the City

of New York.  (See id. at ¶¶ 93-143.)  Plaintiffs seek
compensatory damages, punitive damages, affirmative and
equitable relief, and an award of costs and attorneys' fees.
(Id.)

Defendants move to dismiss the Am. Compl. pursuant to Fed.
R. Civ. P. 12(b)(6) and 12(c) on the following grounds:  (1)
Plaintiffs' claims fail as a matter of law; or (2) Plaintiffs
fail to state a claim.

I.   **BACKGROUND**

The following facts are accepted as true for the purposes
of this motion.  On the evening of June 22, 2015, Plaintiffs
participated in a vigil and march organized by Millions March
NYC, which is affiliated with the Black Lives Matter movement,
concerning Dylann Roof's massacre of nine African-Americans in
Charleston, South Carolina that occurred on June 17, 2015.  (See
Am. Compl. ¶ 11.)  The march began at 125th street in Harlem
after the vigil concluded.  (Id. at ¶ 12.)  Numerous members of
the NYPD, including Community Affairs Officers, escorted march
participants, walking alongside them as they proceeded away from
the vigil location.  (Id. at ¶ 13.)  Later in the march,
however, John Does, members of the NYPD, drove their police
vehicles in an aggressive manner towards the marchers, including
Lynch.  (Id. at ¶ 14.)  Although a member(s) of the NYPD

directed some of the marchers to clear the roadway during the course of the march, Rye was not privy to any such instruction. (Id. at ¶ 15.)

Rye was on W. 104th Street between Columbus and Amsterdam Avenues, toward the middle-front of the march, when she made "a gesture of defiance" toward two John Doe members of the NYPD (on information and belief including Defendant Delarosa) who had been aggressively driving their police car. (Id. at ¶ 16.) Rye turned and stood in front of the police car, facing it, to protect her fellow demonstrators from the aggressive driving. (Id. at ¶ 16.) One of the two John Doe members of the NYPD (on information and belief, Defendant Delarosa) got out of his car angrily and violently, and Rye, concerned for her safety, ran to the sidewalk. (Id. at ¶¶ 17-18.) Upon reaching the sidewalk, Rye slowed to a walking speed. (Id. at ¶ 19.) Delarosa chased Rye to the sidewalk, rushed into her, grabbed her, spun her around, and flung her violently on the pavement, scraping both of her knees. (Id. at ¶ 20.)

Defendant Delarosa then put his knee in Rye's back and handcuffed her with metal handcuffs, and he and another John Doe member of the NYPD removed her from the sidewalk. (Id. at ¶ 21.) Rye is a petite, thin woman, and Defendant Delarosa is a strong male officer. (Id. at ¶¶ 22-23.) Rye was brought to a local NYPD police precinct (on information and belief, either

3

the NYPD 24th or 28th Precinct) where she was chained to a bench outside of the holding cell. (Id. at ¶¶ 25-26.) Inside of the precinct, emergency medical technicians treated Rye for her bloody knees. (Id. at ¶ 27.) Rye was held at the precinct for approximately four or five hours before being released with three summonses. (Id. at ¶ 28.)

The first summons, signed by Defendant Delarosa, charged Rye with disorderly conduct under § 240.20(5) of the New York State Penal Law. (Id. at ¶ 30.) The summons makes the following allegations:

> At T/P/O [time and place of occurrence] [opposite 123 W. 104th Street at 8:55 p.m. on 6/22/15], I personally observed the Defendant with the intent to cause public inconvenience annoyance and alarm, obstruct vehicular traffic by walking on roadway against traffic and did prevent vehicles and other traffic from continuing Eastbound from midblock of location.

(Id. at ¶ 31.)

The second summons, which Defendant Delarosa signed, charged Rye with disorderly conduct under § 240.20(6) of the New York State Penal Law. (Id. at ¶ 35.) The summons makes the following allegations:

> At time and place of occurrence [opposite 123 W. 104th Street at 8:55 p.m. on 6/22/15] indicated herein, I personally observed the Defendant with the intent to cause a public inconvenience, annoyance or alarm, by walking in the middle of the street, to wit West 104 Street between Columbus and Amsterdam Ave, congregating with others persons. Defendant was told

4

by undersigned to move to an accessible public
sidewalk and she refused to do so, continuing
westbound on the street.

(Id. at ¶ 36.)

The third summons, which Defendant Delarosa also signed,

charged Rye with violation of Vehicle and Traffic Law § 1156(a)

(erroneously marked as being a section of the Penal Law), for

"Walk on Roadway with Available Sidewalk." (Id. at ¶ 40.) The

summons makes the following allegations:

> At time and place of occurrence [opposite 123 W. 104th
> Street at 8:55 p.m. on 6/22/15] indicated herein, I
> personally observed the Defendant walking in the
> middle of the road on West 104 Street between
> Amsterdam and Columbus Avenues. Sidewalks were
> available adjacent to the roadway. Available
> sidewalks were safe to traverse at the time of
> incident.

(Id. at ¶ 41.)

Defendant Delarosa communicated with Defendant NYPD Legal

Bureau Agency Attorney Lester Paverman ("Paverman") on June 22,

2015, (on information and belief including concerning the arrest

of Rye and possibly also concerning the arrest of Lynch). (Id.

at ¶ 44.) On information and belief, Defendant Paverman

colluded with Defendant Delarosa to construct false allegations

as to what Defendant Delarosa had allegedly "personally

observed" Rye do to justify her arrest (and possibly with

Defendant Mandy to construct false allegations as to what he had

allegedly "personally observed" Lynch do to justify his arrest).

(Id. at ¶ 45.)  Rye had to appear approximately four or five times in Criminal Court to defend the false allegations in the summonses, until they were dismissed in their entirety around January 11, 2016.  (Id. at ¶¶ 47-48.)

During the march, Lynch, having had surgery approximately eight weeks prior on his cervical spine and thoracic spine, moved slowly and caught up with the back of the march at 104th Street.  (Id. at ¶¶ 49-51.)  As Lynch stood on the south sidewalk, a male and a female member of the NYPD (on information and belief, the female officer was Defendant Mandy) ran up behind him, grabbed him, threw him into a van, and handcuffed him with plastic flexcuffs, without saying a word to him.  (Id. at ¶ 53.)  Lynch felt horrific pain in his neck, upper and lower back, and felt and heard cracking when the two members of the NYPD threw him into the van.  (Id. at ¶ 54.)  Next, Defendants placed Lynch in a police car and took him to a local police precinct, either the NYPD 24th or 28th Precinct, where he was placed in a holding cell.  (Id. at ¶¶ 55-56.)

Lynch was held for approximately five hours at the precinct and released with three summonses, charging him with the same offenses as Rye.  (Id. at ¶ 57.)  The first summons, signed by Defendant Mandy, charged Lynch with disorderly conduct under § 240.20(5) of the New York State Penal Law.  (Id. at ¶¶ 59-60.) The summons makes the following allegations:

> At time + place of occurrence (opposite 123 West 104th Street at 8:47 p.m. on 6/22/15), I personally observed the Defendant, with the intent to cause public inconvenience, annoyance and alarm, obstruct vehicular traffic by standing directly in front of a gray Toyota Camry NY Plate CLC 4505, and did prevent the vehicle and other traffic from continuing eastbound from the midblock location.

(Id. at ¶ 60.)

The second summons, signed by Defendant Mandy, charged Lynch with disorderly conduct under § 240.20(6) of the New York State Penal Law.  (Id. at ¶ 66.)  The summons makes the following allegations:

> At time + place of occurrence (opposite 123 West 104th Street at 8:47 p.m. on 6/22/15), I personally observed the Defendant, with the intent to cause public inconvenience annoyance, + alarm, walking in the middle of the street, to wit west 104 Street between Columbus and Amsterdam Avenues congregating with a group of others.  Defendant was told by undersigned to move to an accessible sidewalk and he refused to do so, continuing westbound on the street.

(Id. at ¶ 67.)

The third summons, signed by Defendant Mandy, charged Lynch with violation of Vehicle and Traffic Law § 1156(a) (erroneously marked as being both a section of the Vehicle and Traffic Law and also of the Penal Law), for "Walk on Roadway with Available Sidewalk."  (Id. at ¶ 73.)  The summons makes the following allegations:

> At time and place of occurrence indicated herein (opposite 123 West 104th Street at 8:47 p.m. on

> 6/22/15) I personally observed the Defendant walking
> in the middle of the road on West 104 Street between
> Columbus and Amsterdam and Avenues.  Sidewalks were
> available adjacent to the roadway.  Available
> sidewalks were safe to traverse at the time of
> incident.

(Id. at ¶ 74.)

A number of demonstrators gathered outside of the precinct.
(Id. at ¶ 77.)  Deputy Inspector Lombardo's task force, known as
Strategic Response Group ("SRG"), and often deployed in
demonstration-related situations, was called to the precinct.
(Id. at ¶ 78.)

While at the precinct, Lynch was denied access to a
bathroom and to food or drink.  (Id. at ¶ 79.)  A John Doe
Officer told Lynch that this was done at Lombardo's orders.
(Id. at ¶ 80.)  Lombardo had previously met Lynch, and at the
precinct the two engaged in a stare down.  (Id. at ¶ 81.)  Lynch
sometimes goes by the name "the Angry Pacifist."  (Id. at ¶ 82.)

Lynch has had serious medical sequelae as a result of the
officers' throwing him into the van, including experiencing
sciatica in his legs for the first time, requiring a number of
spinal epidural injections to his lumbar spine, a medical branch
block, and a radio frequency ablation.  (Id. at ¶ 86.)  It is
possible that Plaintiff will require further, and larger, spinal
surgery to alleviate his pain.  (Id.)  Lynch had to appear four

times in Criminal Court before the charges were dismissed in their entirety on January 11, 2016.  (Id. at ¶¶ 87-88.)

In approximately February, 2016, the NYPD's Legal Bureau entered into a Memorandum of Understanding with the Manhattan District Attorney's Office, in which the District Attorney's Office delegated the authority to prosecute violation-level cases to the NYPD Legal Bureau.  (Id. at ¶ 90.)  NYPD Legal Bureau attorneys only prosecute violation-level cases under the Memorandum of Understanding in an exceedingly small percentage of the violation-level cases brought against people in the City of New York.  (Id. at ¶ 91.)  On information and belief, the NYPD Legal Bureau attorneys exclusively (or almost exclusively) do so in violation-level cases brought against demonstrators, and particularly those demonstrators associated with the Black Lives Matter movement.  (Id.)

Further, when the NYPD Legal Bureau attorneys offer to dismiss the charges in violation-level cases brought against demonstrators, and particularly those demonstrators associated with the Black Lives Matter movement, the NYPD Legal Bureau attorneys exclusively (or almost exclusively) condition that dismissal upon an articulated admission of probable cause on the record, in an attempt to prevent the demonstrators from being able to bring civil rights actions for false arrest and malicious prosecution.  (Id. at ¶ 92.)

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).   Under the "standard for Rule 12(c). . . the [Defendant] is entitled to judgment on the pleadings only if it has established 'that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'"   Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368, at 690 (1969)).   "In deciding a Rule 12(c) motion, a court 'applies the same legal standard as that applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).'"   Hassell v. Fischer, 96 F. Supp. 3d 370, 377-78 (S.D.N.Y. 2015), aff'd, 879 F.3d 41 (2d Cir. 2018) (quoting VoiceAge Corp. v. RealNetworks, Inc., 926 F. Supp. 2d 524, 525 (S.D.N.Y. 2013)).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court, in considering a motion to dismiss, must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002)(citation and internal quotation marks omitted).   Though a court must accept all factual allegations as true, it gives no effect to "legal conclusions couched as factual allegations."   Stadnick v.

Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017) (quoting
Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.
2010)).  "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 556
U.S. at 678.  This "plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Id.
(citations omitted).  Deciding whether a complaint states a
claim upon which relief can be granted is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense."  Rahman v. Schriro, 22 F. Supp. 3d
305, 310 (S.D.N.Y. 2014) (quoting Iqbal, 556 U.S. at 679).

## III.  DISCUSSION

### A.   Plaintiffs Fail to Plead a Claim Against NYPD Agency Attorney Lester Paverman

The claims against Paverman are dismissed because the
allegations in the Am. Compl. fail "to raise a right to relief

11

above the speculative level on the assumption that all the allegations in the complaint are true." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Twombly, 550 U.S. 544). The Supreme Court states that "the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. Iqbal, 556 U.S. at 678 (internal citations omitted).

Here, the facts alleged in the Am. Compl. against Paverman are nothing "more than an unadorned defendant-unlawfully-harmed-me accusation." Id. Specifically, the Am. Compl. states that Paverman "communicated" with Delarosa on June 22, 2015, "on information and belief . . . concerning the arrest" of Rye. (Am. Compl. ¶ 44.) The Am. Compl. further alleges that Paverman "colluded with Defendant DELAROSA to construct false allegations as to what Defendant DELAROSA had allegedly 'personally observed' Plaintiff VIENNA RYE do to supposedly justify her arrest." (Id. at ¶ 45.) Plaintiffs provide no factual basis to support the allegation that Paverman "colluded" with Delarosa. The Am. Compl. merely states that the two parties "communicated." (Id.)

Plaintiffs further attempt to bolster their collusion claim by alleging that "there is a significant history of NYPD Legal Bureau Attorneys assisting arresting officers to construct false

narratives concerning what they allegedly 'personally observed'
in the context of demonstration-related arrests." (Id. at
¶ 46.)   However, Plaintiffs provide no factual allegations to
support the assertion that Paverman constructed false
narratives.   Such "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice" in surviving a motion to dismiss.   Iqbal, 556 U.S. at
678.   "Nor does a complaint suffice if it tenders naked
assertion[s] devoid of further factual enhancement." Id.
(internal citations omitted).   Here, Plaintiffs are "armed with
nothing more than conclusions" that the Defendants "colluded,"
which they base on the allegation that they "communicated."
These bare assertions against Paverman fall far short of Rule
8's requirements as articulated in Iqbal: "only a complaint that
states a plausible claim for relief survives a motion to
dismiss." Id. at 679.   Accordingly, all claims against
Defendant Paverman are dismissed for failure to plead sufficient
facts and state a claim that is plausible on its face.   Twombly,
550 U.S. at 570.

**B.    Plaintiffs Fail to State Federal Law Claims**

Plaintiffs bring this action, in part, pursuant to 42
U.S.C. § 1983 for the alleged deprivations of their rights under

the First, Fourth, and Fourteenth Amendments to the

Constitution.   In relevant part, Section 1983 provides that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights,

but merely provides a method for vindicating federal rights

elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94

(1989) (internal quotation marks and citation omitted).   To

establish liability under Section 1983, a plaintiff must allege

that "(1) the challenged conduct was attributable at least in

part to a person who was acting under color of state law and (2)

the conduct deprived the plaintiff of a right guaranteed under

the Constitution of the United States." Snider v. Dylag, 188

F.3d 51, 53 (2d Cir. 1999) (citation omitted).   Further, "to

impose liability on a municipality under § 1983, a plaintiff

must identify a municipal 'policy' or 'custom' that caused the

plaintiff's injury." Newton v. City of N.Y., 779 F.3d 140, 152

(2d Cir. 2015) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S.

397, 403 (1997)) (internal quotation marks omitted).

### 1.    Probable Cause

Because a finding of probable cause vitiates several of Plaintiffs' claims for relief, the Court addresses the issue of probable cause first.  Under both New York law and federal law, "an officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2014) (quoting Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)) (internal quotation marks omitted); see also Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (finding that a police officer has probable cause to arrest when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense").  "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of N.Y., 804 F.3d 553, 557 (2d Cir. 2015) (internal quotation marks and citation omitted).  Further, the Court of Appeals states "that a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is not required to explore and eliminate

15

every theoretically plausible claim of innocence before making an arrest." Does, 779 F.3d at 93 (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks omitted).

### a)    False Arrest and False Imprisonment

Plaintiffs' § 1983 claim for false arrest derives from their Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, the existence of probable cause is an absolute defense to a false arrest claim. See Weyant, 101 F.3d at 852.

Based upon Plaintiffs' actions on June 22, 2015, Plaintiffs argue that there was "not probable cause to arrest Plaintiffs for violation of any provision of the New York State Penal Law or Vehicle and Traffic Law." (See Am. Compl. ¶¶ 12-13; Pl. Opp. at 15.) Defendants contend that there was probable cause to arrest Plaintiffs for disorderly conduct for obstructing traffic, pursuant to N.Y. PENAL LAW § 240.20(5); disorderly

conduct for walking in the roadway, pursuant to N.Y. PENAL LAW
§ 240.20(6); and walking on the roadway when a sidewalk was
available, pursuant to N.Y. VEH. & TRAF. LAW § 1156(a).  (See
Am. Compl., ¶¶ 30, 35, 40, 57.)

The Court finds that there was probable cause to arrest Rye
for disorderly conduct pursuant to N.Y. PENAL LAW §§ 240.20(5)-
(6), and probable cause to arrest Lynch for walking on the
roadway when a sidewalk was available, pursuant to N.Y. VEH. &
TRAF. LAW § 1156(a).  "A warrantless arrest is justified if the
police have probable cause when the defendant is put under
arrest to believe that an offense has been or is being
committed."  United States v. Nelson, 500 F. App'x 90, 92 (2d
Cir. 2012) (quoting United States v. Cruz, 834 F.2d 47, 50 (2d
Cir. 1987).  Moreover, a "Fourth Amendment claim turns on
whether probable cause existed to arrest for any crime, not
whether probable cause existed with respect to each individual
charge."  Marcavage v. City of N.Y., 689 F.3d 98, 109 (2d Cir.
2012) (citing Jaegly, 439 F.3d at 154).  "Accordingly,
Defendants prevail if there was probable cause to arrest
Plaintiffs for any single offense."  Id. at 109-110.

A person is guilty of disorderly conduct "when, with intent
to cause public inconvenience, annoyance or alarm, or recklessly
creating a risk thereof: . . . (5) He obstructs vehicular or
pedestrian traffic; or (6) He congregates with other persons in

a public place and refuses to comply with a lawful order of the police to disperse. . . ."  N.Y. PENAL Law §§ 240.20(5)-(6) (McKinney 2010).  The Am. Compl. cites a summons, which states that Rye "obstruct[ed] vehicular traffic by walking on roadway against traffic and did prevent vehicles and other traffic from continuing Eastbound from midblock of location."  (Am. Compl. ¶¶ 15-16.)  Additionally, police issued an order to disperse: "a member(s) of the NYPD directed some of the marchers to get out of the roadway during the course of the march."  (Id. ¶ 15.) Further, the Am. Compl. states that Rye, while in the street, "made a gesture of defiance" toward two police officers and "turned and stood briefly facing them in front of their [moving] police car" in a momentary attempt to "protect[] her fellow-demonstrators."  (Am. Compl. ¶¶ 15-16.)

Plaintiffs argue that Rye "was not privy to any such instruction" to disperse and that the "Disorderly Conduct statute that Defendants seek to rely upon contains, as an initial matter, an important scienter requirement" which Defendants fail to prove.  (Am. Compl. ¶ 15; Pl. Opp. at 16.) However,

> We reject [Plaintiff's] contention that the officers
> lacked probable cause to arrest him because the mens
> rea requirement of the disorderly conduct statute was
> not satisfied.  At the outset, we note that N.Y. Penal
> Law § 240.20(6) does not clearly specify whether
> [Plaintiff} must have had the requisite mens rea when
> he "congregate[d] with other persons," when he

18

"refuse[d] to comply with a lawful order," or at both times.

Nelson, 500 F. App'x at 93.

First, there is sufficient evidence in the Am. Compl. to support the conclusion that the officers had probable cause to believe that Rye was "recklessly creating a risk" of "public inconvenience, annoyance or alarm" when she "turned and stood briefly facing [the officers] in front of their police car" and refused to comply with the officers' lawful order to disperse. (Am. Compl. ¶ 15.)  Rye's "combative tone and abusive language [which the Am. Compl. dubs 'a gesture of defiance'] coupled with the location of the incident [in front of a police car in the middle of the road] were sufficient to warrant a person of reasonable caution in the belief that [Rye] was recklessly creating the relevant risks" in violation of N.Y. Penal Law §§ 240.20(5)-(6).  Nelson, 500 F. App'x at 94.  Therefore, the Court finds that the officers had probable cause to arrest Rye pursuant to N.Y. Penal Law §§ 240.20(5)-(6).  Because, "under New York law, the existence of probable cause is an absolute defense to a false arrest claim," Rye's false arrest claim is dismissed.  Jaegly, 439 F.3d at 151-52.  Accordingly, after finding probable cause "to arrest Plaintiffs for any single offense," no further findings of probable cause are necessary

under the additional charges laid out in the summons.
Marcavage, 689 F.3d at 110.

Similarly, the Court finds that there is sufficient
evidence in the Am. Compl. to support the conclusion that the
officers had probable cause to arrest Lynch for violations of
VTL § 1156(a).  Pursuant to § 1156(a), it is unlawful to walk in
the street when a sidewalk is available.  Although a violation
of this statute is a traffic infraction, it still constitutes
probable cause for a custodial arrest for purposes of federal
law.  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)
(holding that an arrest is warranted for the commission of even
a very minor criminal offense in the presence of a police
officer); see also United States v. McFadden, 238 F.3d 198, 203
(2d Cir. 2001) (holding that police had probable cause to arrest
an individual seen riding a bicycle on the sidewalk—a traffic
infraction under New York City law—and that the arrest did not
violate the Fourth Amendment).  Additionally, under State law a
violation of § 1156(a) provides probable cause for arrest
because "a police officer is empowered to arrest a person for
any traffic infraction committed in the officer's presence."
People v. Cortes, 382 N.Y.S.2d 445, 447 (N.Y. Sup. Ct. 1976).
As stated in the Am. Compl, Lynch participated in the march,
which was proceeding through the roadway, when sidewalks were
available, even after officers gave a lawful order to disperse.

(Am. Compl. ¶ 51.) Accordingly, this Court finds that there was probable cause to make an arrest, and Lynch's false arrest claim is dismissed.

### b)   Malicious Prosecution

Under New York law, a plaintiff claiming malicious prosecution must show the following elements: "(1) the initiation or continuation of a criminal proceeding against [him]; (2) termination of the proceeding in [his] favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant[s'] actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) (citation and quotation marks omitted) (emphasis added). Additionally, "in order to allege a cause of action for malicious prosecution under § 1983, [Plaintiffs] must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000). All of the above elements must be satisfied to plead adequately a claim of malicious prosecution. See, e.g., Tyk v. Surat, 675 F. App'x 40, 41 (2d Cir. 2017) (dismissing § 1983 claim for malicious prosecution under New York law for failure to include facts in support of all five elements). Therefore, "a finding

of probable cause defeats a malicious prosecution claim." Obilo
v. City Univ. of N.Y., No. CV-01-5118(DGT), 2003 WL 1809471, at
*9 (E.D.N.Y. Apr. 7, 2003) (citing Moore v. Comesanas, 32 F.3d
670, 673 (2d Cir. 1994)).  Accordingly, because the Court finds
that officers had probable cause to arrest Plaintiffs, (see
supra Part.III.B.1.a.), and because probable cause is a complete
defense to a malicious prosecution claim, Plaintiffs' malicious
prosecution claims, under both § 1983 and state law, fail.  See
Comesanas, 32 F.3d at 673 (holding that "if . . . probable cause
existed, [a] claim of false arrest and malicious prosecution
must be rejected").

### c)   Abuse of Process

"[A] malicious abuse of process claim lies against a
defendant who (1) employs regularly issued legal process to
compel performance or forbearance of some act (2) with intent to
do harm without excuse or justification, and (3) in order to
obtain a collateral objective that is outside the legitimate
ends of the process." Rios v. City of N.Y., 687 F. App'x 88, 91
(2d Cir. 2017) (citing Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir.
1994)).  Plaintiffs' abuse of process claims under § 1983 fail
because Plaintiffs are unable to show the third element, that
defendants were seeking a collateral objective or corresponding
detriment to plaintiffs which was outside the legitimate ends of
the process.  (Am. Compl. ¶¶ 134-136.)  "In order to state a

claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action," beyond or in addition to the Plaintiffs' criminal prosecutions. Savino v. City of N.Y., 331 F.3d 63, 77 (2d Cir. 2003).  A "malicious motive alone . . . does not give rise to a cause of action for abuse of process." Id.  Here, Plaintiffs fail to allege any "collateral purpose," "outside the legitimate ends of this process," including  "extortion, blackmail or retribution" which are "the collateral objectives typically associated with abuse of criminal process." Oathout v. Decker, No. 99 CV 5868 (WHP) (KNF), 2000 U.S. Dist. LEXIS 12001, at *20 (S.D.N.Y. Aug. 21, 2000).

Additionally,

> [n]umerous district courts within our Circuit [have held] that probable cause is a complete defense to an abuse-of-process claim under New York law, because it is an "excuse or justification."  Indeed, [the Court of Appeals] has [] lent support to this interpretation in a non-precedential summary order, in which [it] held that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the officers lacked probable cause for her arrest . . . required dismissal of her . . . claims of abuse of process."

Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 958-59 (2d Cir. 2015) (quoting Jones v. J.C. Penny's Dep't Stores Inc., 317 F. App'x 71, 74 (2d Cir. 2009); see Hickey v. City of N.Y., No. 01-CV-6506(GEL), 2004 WL 2724079, at *7 (S.D.N.Y. Nov. 29, 2004) ("[T]he existence of probable cause offers a complete defense to

[abuse of process]."), aff'd, 173 F. App'x 893 (2d Cir. 2006).
Accordingly, for the foregoing reasons, Plaintiffs' abuse of
process claims fail and are dismissed.

### d)    First Amendment

Plaintiffs' claims for the violation of and retaliation for
the right to free speech and assembly pursuant to § 1983 and
under state law also fail.  First, Plaintiffs have failed to
demonstrate impermissible time, place, or manner restrictions
with regard to the laws Plaintiffs were charged with breaking.
Second, the existence of probable cause is a complete defense to
a First Amendment retaliation claim.

The Supreme Court has declared that "the First Amendment
protects political demonstrations and protests—activities at the
heart of what the Bill of Rights was designed to safeguard
. . . . That said, First Amendment protections, while broad, are
not absolute."  Jones v. Parmley, 465 F.3d 46, 56 (2d Cir.
2006).  The Supreme Court "has held that the government may
regulate the time, place, and manner of [ ] expressive activity,
so long as such restrictions are content neutral, are narrowly
tailored to serve a significant governmental interest, and leave
open ample alternatives for communication."  Burson v. Freeman,
504 U.S. 191, 197 (1992).  "Government regulation of expressive
activity is content neutral so long as it is 'justified without

reference to the content of the regulated speech.'" <u>Ward v.</u>
<u>Rock Against Racism</u>, 491 U.S. 781, 791 (1989).  Moreover, "even
if a facially neutral law disproportionately affects speech on
certain topics, it remains content neutral so long as it is
justified without reference to the content of the regulated
speech." <u>McCullen v. Coakley</u>, 134 S. Ct. 2518, 2523 (2014)
(internal quotation marks omitted).

    The Am. Compl. fails to allege a First Amendment violation
as Plaintiffs fail to state how the time, place and manner
regulations imposed by VTL § 1156(a) and Penal LAW §§ 240.20(5)
-(6) are content-based.  Rather, Plaintiffs only assert that
"[t]he NYPD has displayed a particular animus toward
demonstrators associated with the Black Lives Matter movement,
which is deemed by many in the NYPD to be anti-police"  (Am.
Compl. ¶ 89) and then argue conclusorily "interference
with . . . and retaliation for, the exercise of their First
Amendment rights."  (Pls.' Opp., at 23-24.)

    First, some floating "animus" toward a movement, even one
Plaintiffs' purport to belong to, is far too threadbare to
constitute content-based interference with free speech.
Defendants' orders to the Plaintiffs to get out of the roadway
"in no way prohibit[ed] conduct on the basis of [Plaintiffs']
intended message.  Instead, [the dispersal order] work[s] to
serve important government interests of ensuring safety" by

keeping individuals out of the roadway.  Marlin v. City of N.Y.,
No. 15 CV 2235 (CM), 2016 U.S. Dist. LEXIS 122426, at *46
(S.D.N.Y. Sept. 7, 2016).  Moreover, the Court of Appeals has
repeatedly held that "[e]ven in public forums . . . the
government may impose reasonable content-neutral restrictions on
the time, place, or manner of protected speech."  Lederman v.
N.Y.C. Dep't of Parks & Recreation, 731 F.3d 199, 202 (2d Cir.
2013).  Accordingly, Plaintiffs "fail to sustain a First
Amendment claim . . . because they [do not assert] that
defendants' dispersal orders were based on any animus towards,
or even consideration of, [protesters'] political message."
Caravalho v. City of N.Y., No. 13-CV-4174 (PKC)(MHD), 2016 U.S.
Dist. LEXIS 44280, at *55 (S.D.N.Y. Mar. 31, 2016).

     Second, because the Court finds there was probable cause to
arrest Plaintiffs (see supra Part.III.B.1.a.), Plaintiffs'
claims that their arrests and prosecutions were driven by First
Amendment retaliation also fail.  "The existence
of probable cause will defeat . . . a First Amendment claim that
is premised on the allegation that defendants prosecuted a
plaintiff out of a retaliatory motive, in an attempt to silence
[him]."  Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).
The Court of Appeals states, "we have 'agree[d] with [a]
district court that [a plaintiff's] claim[ ] of . . . First
Amendment retaliation fail[ed] because [the] defendants

had probable cause to believe [that the plaintiff] committed the offense at issue.'" Mangino, 808 F.3d at 957 (quoting Fabrikant, 691 F.3d at 215-16).  Accordingly, because the existence of probable cause is an absolute defense to a First Amendment retaliation claim, and because the Am. Compl. contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Plaintiffs' First Amendment claims fail.  Iqbal, 556 U.S. at 678.

### 2.   Equal Protection

Plaintiffs allege that Defendants violated their rights to equal protection of the law by depriving them of their liberty and property when they were "(falsely) accused of committing disorderly conduct and a VTL violation."  (See Am. Compl. ¶¶ 128-130; Pl. Opp. at 30.)  Defendants argue that Plaintiffs' claim should be dismissed for failing to allege that Plaintiffs were treated differently from other similarly situated persons on the basis of their race, national origin, or gender.

To state a claim for an equal protection violation Plaintiffs must show: (1) that they were treated differently from other similarly situated individuals, and (2) Plaintiffs "must allege that a government actor intentionally discriminated against them on the basis of race, national origin or

gender." Hayden v. Cty. of Nassau, 180 F.3d 42, 48 (2d Cir. 1999). Thus, a Plaintiff must first allege that he or she was treated differently from others in a similar situation, and then the Plaintiff must allege discriminatory intent, as "discriminatory intent [as] a motivating factor is required to show a violation of the Equal Protection Clause." Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 438 (2d Cir. 2009).

Here, Plaintiffs allege that Defendants took part "in unconstitutional, violent, and overly aggressive actions toward individuals perceived as being affiliated with the Black Lives Matter movement." (Am. Compl. ¶ 104.) However, the Am. Compl. contains no allegations that Plaintiffs were discriminated against on the basis of any protected class, or that Plaintiffs were treated differently from others similarly situated. Moreover, Plaintiffs are of different ages, races, national origins, and genders. Accordingly, Plaintiffs fail to allege treatment different from others similarly situated based on a stated class, and therefore, Plaintiffs' equal protection claims are dismissed. (See Am. Compl. ¶¶ 11-92) (failing to allege differential treatment toward others similarly situated).

### 3.   Assault and Battery

Plaintiff Rye alleges that "JOHN DOE Officer (on
information and belief Defendant DELAROSA) chased Plaintiff to
the sidewalk, and then – without justification, and without
saying a word to her – rushed into her, grabbed her, spun her
around, and flung her violently on the pavement, scraping both
of her knees." (See Am. Compl. ¶¶ 20-21.)  "To succeed on an
assault or battery claim in the law enforcement context, a
plaintiff must demonstrate that defendants' conduct was not
reasonable within the meaning of the New York statute concerning
justification for law enforcement's use of force in the course
of performing their duties." Cuellar v. Love, No. 11-CV-3632
(NSR), 2014 WL 1486458, at *13 (S.D.N.Y. Apr. 11,
2014)(quoting Torres-Cuesta v. Berberich, 511 F. App'x 89, 91
(2d Cir. 2013)); see also N.Y. Penal Law § 35.30(1)(laying out
standards for law enforcement's use of force during arrest).
"Essentially, the Fourth Amendment excessive force standard
applies to assault and battery claims against a police officer
under New York law." Marcano v. City of Schenectady, No. 1:12-
CV-00036, 2014 WL 3953198, at *15 (N.D.N.Y. Aug.
13, 2014) (citation omitted).

In examining an excessive force claim, courts must use the
standard of "objective reasonableness," defined as "a careful

balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake.'" Graham, 490 U.S. at 396 (quoting United States v. Place, 462 U.S. 696 (1983)). "In conducting this balancing, we look to a number of factors, including 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Figueroa v. Mazza, 825 F.3d 89, 105 (2d Cir. 2016) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d Cir. 2001)).

Moreover, the "reasonableness" of the "use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 387. Here, under the "objective reasonableness" balancing standard, the use of force against Plaintiff Rye was a reasonable response from an officer on the scene. Rye was fleeing from Defendant Delarosa after she "turned and stood briefly facing [the officers] in front of their [moving] police car," in the middle of the road, failed to comply with the officers' lawful order to disperse, and gave them "a gesture of defiance." (Am. Compl. ¶ 15.) Defendant had probable cause to

make an arrest, pursued Rye, and arrested her "in a good faith
effort to maintain or restore discipline." Figueroa, 825 F.3d
at 105 (quoting Johnson, 239 F.3d at 251-52).   Rye has failed to
allege a "malicious[] and sadistic [] [use of force]  for the
very purpose of causing harm." Figueroa, 825 F.3d at 105
(quoting Johnson, 239 F.3d at 251-52).   Rather, the use of force
was necessary as Rye was fleeing, and the extent of injury was
minor, resulting in scraped knees.  See Holmes v. City of N.Y.,
No. 14 CV 5253-LTS, 2016 U.S. Dist. LEXIS 27945, at *14
(S.D.N.Y. Mar. 4, 2016) (finding no excessive force when
plaintiff alleged she was "roughly brought to the ground by
large NYPD officers and then handcuffed tightly, which were
allegedly excessive uses of force that violated her Fourth and
Fourteenth Amendment rights").  Defendant Delarosa responded to
Rye's actions the way that a reasonable officer on the scene is
trained to do: by pursuing, stopping, and arresting her.
Accordingly, Plaintiff Rye's assault and battery claim is
dismissed.

      Similarly, under the "objective reasonableness" standard
and "judged from the perspective of a reasonable officer on the
scene," Lynch's excessive force claim fails.  Plaintiff Lynch
alleges that while he was standing on the south sidewalk of
104th street, "two JOHN DOES members of the NYPD, one male and
one female (on information and belief the female officer was

Defendant MANDY), ran up behind him, grabbed him, threw him with great force into a van, and handcuffed him with excessive and painful tightness, on information and belief with plastic flexcuffs" causing "horrific pain in his neck, and upper and lower back," resulting in "serious medical sequelae." (See Am. Compl. ¶¶ 54-55, 86.)  Lynch alleges that a John Doe and Mandy handcuffed Lynch, and that the handcuffs were "excessive[ly] and painful[ly] tight[]." Plaintiff does not allege that he informed any of the other Defendants named in the Am. Compl. that the handcuffs were too tight. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Richardson v. N.Y.C. Health & Hosps. Corp., No. 05 Civ. 6278(RJS), 2009 WL 804096, at *10 (quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)).  Because Lynch does not allege that any Defendant other than John Doe and Defendant Mandy used excessive force during the arrest, Plaintiff's excessive force claim as to the other Defendants is dismissed.

As to Plaintiff's allegations regarding Defendants John Doe and Mandy, it is true that excessively tight handcuffing may constitute use of excessive force. See Kerman v. City of N.Y., 261 F.3d 229, 239-40 (2d Cir. 2001). However, like all excessive force claims, the central question is whether the officer's behavior was objectively reasonable in light of the

32

circumstances.  Here, the Court finds that Defendants acted

reasonablys from "the perspective of a reasonable officer on the

scene" when they threw Lynch against a van and handcuffed him in

order to effectuate arrest.  Graham, 490 U.S. at 387.  Lynch was

participating in a march, "comprised of a large number of

people" when "member(s) of the NYPD directed some of the

marchers to get out of the roadway during the course of the

march."  (See Am. Compl. ¶¶ 12, 15.)  Defendants had probable

cause to arrest Lynch for a violation of Vehicle and Traffic Law

§ 1156(a) (see supra Part.III.B.1.a.), and the force Defendants

used was "objectively reasonable" given the circumstances on the

scene: protestors in the roadway, failure to comply with the

order of dispersal, and the size of the crowd.  Accordingly,

Plaintiff Lynch's assault and battery claim is dismissed.

### C.    Plaintiffs Fail to Allege State Law Claims

#### 1.    Plaintiffs Fail to Allege Claims for Negligent Hiring, Screening, Retention, Supervision, and Training

Plaintiffs' tenth claim alleges that "Defendants THE CITY

OF NEW YORK negligently hired, screened, retained, supervised

and trained defendants."  (Am. Compl. ¶ 126.)  "To state a claim

for negligent supervision or retention under New York law, in

addition to the standard elements of negligence, a plaintiff

must show: (1) that the tort-feasor and the defendant were in an

employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).   Regarding these claims, the Am. Compl. is a formulaic recitation of the elements of the cause of action and contains nothing more than conclusions without further factual enhancement.   See Iqbal, 556 U.S. at 678 (finding "a complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement").   Moreover,

> [a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment.  See Murns v. City of New York, 2001 U.S. Dist. LEXIS 6287, No. 00 Civ. 9590 (DLC), 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001)(collecting cases).  When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of respondeat superior, and no claim may proceed against the employer for negligent hiring or retention.  Karoon v. New York City Transit Authority, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606, at *27-28 (S.D.N.Y. Apr. 15, 2004).

Here, Plaintiffs have failed to allege that Defendants were acting outside the scope of their employment at the time of the

alleged misconduct.  Indeed, the Am. Compl. explicitly states that Defendants were acting within the scope of their employment, "acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant City."  (Am. Compl. at ¶¶ 9-10.)  Accordingly, Plaintiffs' claims against Defendant City for negligent hiring, screening, retention, supervision, and training fail as a matter of law and are dismissed.

### 2.   Plaintiff Lynch Fails to Allege Claims for Negligent and Intentional Infliction of Emotional Distress

Plaintiff Lynch alleges that "defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress."  (See Am. Compl. ¶ 142.)  Lynch further states that "[v]iolently attacking and arresting someone who is simply standing on a sidewalk and causing him serious physical injury--and thereafter denying him access to a bathroom, food and water out of retaliatory animus--is obviously extreme and outrageous conduct."  (Pl. Opp. at 29.)

Under New York law, "negligent infliction of emotional distress [NIED]   . . . requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress."  Romero v.

City of N.Y., 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012)
(citations omitted).  A claim for intentional infliction of
emotional distress ("IIED") must show the same elements, as well
as "intent to cause, or reckless disregard of a substantial
probability of causing, severe emotional distress."  Id. at 629.

Lynch's claims for IIED fail as "a lawful arrest is a bar
to a claim for intentional infliction of emotional
distress."  Sepulveda v. City of N.Y., No. 01 Civ. 3054 (DC),
2003 U.S. Dist. LEXIS 12289, at *16 (S.D.N.Y. July 17, 2003)
(citing Csoka v. Cty. of Suffolk, 85 F. Supp. 2d 117, 123
(E.D.N.Y. 2000). As previously discussed (see supra
Part.III.B.1.a.), there was probable cause to arrest Lynch, and
therefore Lynch's arrest was lawful.  United States v. Brock,
No. 13-cr-6025, 2016 U.S. Dist. LEXIS 90990, at * 13 (W.D.N.Y.
July 13, 2016) ("[A]s long as the police objectively possess
enough information to establish probable cause, the arrest is
lawful.").  Moreover, "[a] cause of action for either
intentional or negligent infliction of emotional distress must
allege that the defendants' conduct was so outrageous in
character, and so extreme in degree, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community."  Naughright v.
Weiss, 826 F. Supp. 2d 676, 697-98 (S.D.N.Y. 2011).  "The
requirements of the rule are rigorous, and difficult to

satisfy." <u>Cruz v. Marchetto</u>, No. 11 CIV. 8378, 2012 WL 4513484, at *5 (S.D.N.Y. Oct. 1, 2012)(quoting PROSSER & KEETON, TORTS § 12, at 60-61 (5th ed. 1984)).

Accepting the facts of the Am. Compl. in the light most favorable to Lynch, Plaintiff has failed to allege facts demonstrating extreme or outrageous conduct by Defendants necessary to support an IIED or NIED claim. <u>See</u> <u>Morse v. Spitzer</u>, No. 07-cv-4793, 2011 WL 4626004, at *14 (E.D.N.Y. Mar. 31, 2011) (Report & Recommendation) (plaintiff who was arrested and detained for eight hours did not have a plausible claim for IIED). Moreover, as previously discussed, the Court finds Defendants' use of force in effectuating Lynch's arrest reasonable "from the perspective of a reasonable officer on the scene." (See <u>supra</u> Part.III.B.3.) Accordingly, Plaintiff's IIED and NIED claims are dismissed.

### 3.   Plaintiffs' Claims for Trespass and Constitutional Tort[1] are Duplicative of Other Claims, and are Dismissed

Plaintiffs' fifth claim is a state law claim for assault and battery; their eighth claim is a claim for trespass. "Under New York law, trespass is the intentional invasion of another's property." <u>Town of New Windsor v. Avery Dennison Corp.</u>, No. 10-

---

[1] "Plaintiffs withdraw their claims for negligence." (Pl. Opp. at 30.)

cv-8611, 2012 WL 677971, at *14 (S.D.N.Y. Mar. 1,
2012) (quoting Scribner v. Summers, 84 F.3d 554, 557 (2d Cir.
1996)). "Nowhere in [their] Complaint do[] plaintiff[s] allege
invasion of [their] property by defendants; [their] claim is for
trespass on [their] person. Under New York law, claims for
trespass upon one's person are properly classified as battery."
Dotson v. Farrugia, No. 11 Civ. 1126 (PAE), 2012 U.S. Dist.
LEXIS 41195, at *19-20 (S.D.N.Y. Mar. 26, 2012). Plaintiffs
concede this point, stating in Pl. Opp. that "[c]oncerning
Plaintiffs' claims for trespass upon the person, this
phraseology is sometimes used somewhat synonymously with common
law battery." (Pl. Opp. at 29-30.) Accordingly, as Plaintiffs
have separately alleged claims of assault and battery,
Plaintiffs' claims for trespass are duplicative and, therefore,
are dismissed.

     Plaintiffs' fourteenth claim is for constitutional tort
under the New York State Constitution. This claim consists of
only the conclusory assertion that defendants, "acting under
color of law, violated Plaintiffs' rights pursuant to Article I,
§§ 6, 8, 9, 11 and 12 of the New York State Constitution." (Am.
Compl. ¶ 138.) "Plaintiff[s] do[] not allege specific facts to
support these assertions, and to the extent the Court can
attempt to map plaintiff[s'] allegations in the Complaint onto
the sections cited, the claims are duplicative of separately

enumerated claims." Dotson, 2012 U.S. Dist. LEXIS 41195, at

*19-20.  Moreover, "[d]istrict courts in this circuit have

consistently held that there is no private right of action under

the New York State Constitution where, as here, remedies are

available under § 1983." Hershey v. Goldstein, 938 F. Supp. 2d

491, 520 (S.D.N.Y. 2013) (quoting Campbell v. City of N.Y., No.

09-CV-3306 (FB)(JO), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15,

2011).  Accordingly, "Plaintiff[s'] claim for constitutional

tort against the State Defendants therefore fails to state a

claim upon which relief may be granted, and it is dismissed."

Dotson, 2012 U.S. Dist. LEXIS 41195, at *19-20.


### D.   Plaintiffs Fail to State Municipal Liability Claims Regarding the NYPD Legal Bureau and Respondeat Superior Liability of the City of New York for State Law Violations

In their third and fourth claims, Plaintiffs allege,

respectively, a variety of municipal liability claims including

constitutional deprivations, and respondeat superior liability

of the City of New York for state law violations.  (See Am.

Compl. ¶¶ 99-109.)  Regarding municipal liability claims

("Monell claims"), the Court of Appeals states:

> In order to prevail on a claim against a municipality
> under section 1983 based on acts of a public official,
> a plaintiff is required to prove: (1) actions taken
> under color of law; (2) deprivation of a
> constitutional or statutory right; (3) causation;

>      (4) damages; and (5) that an official policy of the
>      municipality caused the constitutional injury.

Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir.

2008)(citing Monell v. Dep't of Social Servs., 436 U.S.

658, 690-91 (1978).

"The fifth element—the 'official policy' element—can only

be satisfied where a plaintiff proves that a municipal policy of

some nature caused a constitutional tort." Id. (quoting Monell,

436 U.S. at 691.)  Therefore, "for a municipality to be included

among those persons to whom § 1983 applies" a Plaintiff must

show "that a policy or custom of the city subjected him, or

caused him to be subjected to the deprivation of constitutional

rights." Oklahoma City v. Tuttle, 471 U.S. 808, 827-28 (1985).

"In other words, a municipality cannot be held liable under

§ 1983 on a respondeat superior theory." Monell, 436 U.S. at

691; see also Bd. of Cty. Comm'rs, 520 U.S. at 405 ("[A]

municipality may not be found liable simply because one of its

employees committed a tort.").

A Plaintiff may satisfy the "official policy" requirement—

thus establishing municipal liability—by alleging (1) a formal

policy officially endorsed by the municipality; (2) actions

taken by government officials responsible for establishing the

municipal policies that caused the particular deprivation in

question; (3) a practice so consistent and widespread that,

although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Staten v. Vill. of Monticello, No. 14-CV-4766 (KMK), 2015 WL 6473041, at *9 (S.D.N.Y. Oct. 26, 2015).

At the outset, Plaintiffs have failed to allege adequately violations of their constitutional rights. (See supra Part.III.B.) However, even assuming that Plaintiffs had alleged adequately constitutional violations, applying the guiding principles laid out above in Roe and Monell, the Am. Compl. fails to allege a direct causal link between an official policy or custom and the Plaintiffs' specific injuries. (See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (holding that "[a]bsent a showing of a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability against the City").

The Am. Compl. cites to numerous litigations as evidence of the "official policy" element, stating that "a number of similar claims against NYPD Legal Bureau attorneys are currently still pending, and have already survived dispositive motions," suggesting that these litigations are sufficient to satisfy the

pleading requirements laid out in <u>Monell</u>.  (Pl. Opp. at 7-8.)
However, the Court of Appeals has stated that "citation to
various lawsuits . . . [is] not probative of the existence of an
underlying policy." <u>Jean-Laurent v. Wilkerson</u>, 461 F. App'x 18,
23 (2d Cir. 2012); <u>see</u> <u>Mediavilla v. City of N.Y.</u>, 259 F. Supp.
3d 82, 110 (S.D.N.Y. 2016) (holding that "references to other
litigations are insufficient to establish the requisite policy
or practice required to sustain <u>Monell</u> claims.").

"Further, the Court agrees with the City that the litany of
other police-misconduct cases [is] insufficient to make a
plausible case for <u>Monell</u> liability," particularly when the
cases "involve something less (settlements without admissions of
liability and unproven allegations) than evidence of
misconduct." <u>Collins v. City of N.Y.</u>, 923 F. Supp. 2d 462, 479
(E.D.N.Y. 2013).  The Am. Compl. cites to one such case where
the Court found that plaintiffs'

> fail to specifically connect any of the mentioned
> lawsuits . . . to the specific policies and practices
> [plaintiffs] allege in their <u>Monell</u> claims here.  The
> Court thus finds that Plaintiffs have failed to
> provide sufficient factual allegations to demonstrate,
> even circumstantially, the existence of municipal
> policies that were responsible for Plaintiffs'
> constitutional violations.

<u>Arbuckle v. City of N.Y.</u>, No. 14 Civ. 10248 (ER), 2016 U.S.
Dist. LEXIS 136857, *50-51 (S.D.N.Y. Sept. 30, 2016).

Additionally, in support of the Monell claim, the Am.
Compl. includes pages of deposition testimony from different
actions, with different parties.  (See Am. Compl. ¶ 105.)
However, "deposition testimony taken in a different action is
only admissible if the present action involves the same subject
matter and the same parties." Mediavilla, 259 F. Supp. 3d at
110.  Moreover, although at this stage Plaintiffs need not prove
every element of a Monell claim, Plaintiffs must still plead
them sufficiently to state a plausible claim for relief.  See
Iqbal, 556 U.S. at 678.  Here, Plaintiffs have not alleged
plausibly a "direct causal link between a municipal policy or
custom and the alleged constitutional deprivation." Triano v.
Town of Harrison, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)
(quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Moreover, Plaintiffs' municipal liability claims, including
claims for respondeat superior liability of the City of New
York, fail because "boilerplate assertions that a municipality
has such a custom or policy which resulted in a deprivation of
the plaintiff's rights is insufficient to state a Monell claim."
See Araujo v. City of N.Y., No. 08-CV-3715 (KAM) (JMA), 2010
U.S. Dist. LEXIS 26082, at *29 (E.D.N.Y. Mar. 19, 2010).  Here,
Plaintiff's Am. Compl. contains only conclusory allegations that
the Municipal Defendants had "de facto policies, practices,
customs, and usages of failing to properly train, screen,

supervise, or discipline employees . . . [which] were a direct
and proximate cause of the unconstitutional conduct alleged.
(Compl. ¶ 58)[Am. Compl. ¶ 101.]  In this regard, [plaintiff's]
complaint succinctly states one of the core legal concepts
animating Monell liability.  But it does absolutely nothing
else."  See Abreu v. City of N.Y., 657 F. Supp. 2d 357, 360-61
(E.D.N.Y. 2009).  Plaintiffs allege no facts to indicate any
deliberate choice by municipal policymakers to engage in
unconstitutional conduct.  Moreover, Plaintiffs' allegations
that the Municipal Defendants acted pursuant to "de facto
policies, practices, customs, and usages" without any facts
suggesting the existence of the same, are plainly insufficient
to state a Section 1983 claim against the Municipal Defendants.
See Abreu, 657 F. Supp. 2d at 360-61; Bradley v. City of N.Y.,
No. 08-CV-1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-9
(E.D.N.Y. June 18, 2009) (dismissing municipal liability claim
where the "[c]omplaint's conclusory, boilerplate language --
that the City 'fail[ed] to adequately train, discipline, and
supervise' employees and 'fail[e]d to promulgate and put into
effect appropriate rules and regulations applicable to the
duties and behavior' of its employees"--[was] insufficient to
raise an inference of the existence of a custom or policy).

    The Monell claim language contained in the Am. Compl.
mirrors, verbatim, the language from the Compl. cited above in

Araujo.  This is the definition of boilerplate.  Accordingly,
Plaintiffs' municipal liability claims against Defendant the
City of New York for constitutional violations and for
respondeat superior liability are dismissed.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to
Dismiss and for Judgement on the Pleadings [dkt. no. 35] is
GRANTED.

The Clerk of Court shall mark this action closed and all
motions denied as moot.


SO ORDERED.

Dated: March 27, 2018

_____
LORETTA A. PRESKA
Senior United States District Judge