UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
RICHARD LYNCH, et al.,

                 Plaintiffs,

        -versus-

THE CITY OF NEW YORK, et al.,

                 Defendants.
```

No. 16 Civ. 7355

ORDER

LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE:

Before the Court are three motions.  First, Plaintiff
Richard Lynch ("Lynch") moves for leave to amend his complaint
to remedy certain defects in his allegations against Defendants
Andrew Lombardo ("Lombardo") and Lester Paverman ("Paverman").
(Dkt. nos. 57, 59, 62.)  Next, the City of New York ("City"),
Lombardo, and Paverman move (i) to bifurcate discovery and trial
of the claims against the City from those against the individual
defendants, and (ii) to stay this action for ninety days due to
the ongoing COVID-19 pandemic.  (Dkt. no. 60.)  For the reasons
set forth below, Lynch's motion for leave to amend is DENIED,
Defendants' motion to bifurcate is GRANTED, and Defendants'
motion for a stay is DENIED as moot.

## I.   Motion for Leave to Amend

Lynch initiated this civil rights action in 2016 and
amended his complaint in March 2017.  (See Amended Complaint,
dated Mar. 6, 2017 ("FAC") [dkt. no. 18].)  The FAC asserted
federal and state law claims against the City and members of the

1

New York City Police Department ("NYPD") arising from Lynch's

arrest during a demonstration organized by an affiliate of the

Black Lives Matter movement.  In short, Lynch alleged that while

he was participating in the demonstration, Officer Mariann Mandy

("Mandy") and another officer used excessive force in detaining

him, causing Lynch physical injury, and that Mandy falsely swore

out summonses accusing Lynch of various offenses.  The FAC

alleged that Lombardo oversaw the NYPD's response to the

demonstration and gave instructions on how Lynch should be

treated while detained at the police precinct.  The FAC further

alleged that Paverman, an NYPD Legal Bureau Agency Attorney,

potentially colluded with Mandy when she prepared the false

summons against Lynch as a cover-up to justify Lynch's arrest.

In March 2018, the Court entered an order dismissing

Lynch's lawsuit in its entirety under Fed. R. Civ. P. 12(b)(6)

and 12(c).  See Lynch v. City of New York, No. 16 Civ. 7355,

2018 WL 1750078 (S.D.N.Y. Mar. 27, 2018).  Lynch appealed from

that order, and the Court of Appeals affirmed dismissal of the

claims against Lombardo and Paverman, among others, but vacated

the dismissal of the claims against the City and Mandy.  See

Lynch v. City of New York, 952 F.3d 67 (2d Cir. 2020).

On March 27, 2020, Lynch filed a Proposed Second Amended

Complaint, contending that proposed amendments remedied the

shortcomings the Court of Appeals identified with respect to the

claims against Lombardo and Paverman.  (See Proposed Second Amended Complaint, dated Mar. 27, 2020 ("Proposed Complaint" or "PSAC") [dkt. no. 59]; Plaintiff's Letter dated Apr. 17, 2020 ("Pl. Ltr.") [dkt. no. 62].)  Having reviewed the Proposed Complaint, the Court concludes that the allegations against Lombardo and Paverman still fail to state a claim for relief, making amendment futile and therefore unwarranted.

    a.  **Legal Standard**

    Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with "the court's leave" and that "[t]he court should freely grant leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Appropriate reasons for denying leave to amend include, among other things, "futility of the amendment."  State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  "A proposed amendment is futile, and need not be allowed, when it would fail to cure the deficiencies identified in the prior complaint."  Vierczhalek v. MedImmune Inc., 803 F. App'x 522, 526 (2d Cir. Mar. 18, 2020) (summary order).  "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) (internal citation omitted).

### b. Analysis

#### i. Lombardo

The Proposed Complaint fails to remedy the defects in the FAC as to the claims against Lombardo.  By way of background, the FAC alleged that Lombardo ran a task force that responded to public demonstrations (FAC ¶ 78); was "notorious for his abuse of demonstrators' rights" (id. ¶ 85); "kn[ew] [Lynch] well" and "engaged in a stare-down with [Lynch] at the precinct" (id. ¶ 81); "fail[ed] to protect [Lynch] from the unjustified and unconstitutional treatment [he] received at the hands of other defendants" (id. ¶ 94); and "fail[ed] to properly train, supervise, or discipline [his] subordinates" (id. ¶ 97).  The FAC further alleged that when Lynch was detained at the police precinct, Lombardo instructed that he be denied food, water, and access to the restroom, and that this treatment was meant to be punitive.  (Id. ¶¶ 79-81, 85.)  In affirming dismissal of the claims against Lombardo, the Court of Appeals found these allegations insufficient because, among other things, Lynch failed to allege that "Lombardo was involved in the arrest of Lynch or in the preparation of the Lynch Summonses, or that Mandy was among the officers supervised by Lombardo." Lynch v. City of New York, 952 F.3d 67, 77 (2d Cir. 2020).

Despite Lynch's arguments to the contrary, the Proposed Complaint does not plausibly fill the pleading gaps identified

by the Court of Appeals -- i.e., the absence of well-pleaded facts

showing that Lombardo participated directly or indirectly in the

alleged misconduct against Lynch.  The Proposed Complaint

alleges, on information and belief, that during the protest,

Lombardo was Mandy's supervisor and in control of the NYPD's

policing efforts and that he targeted Lynch for false arrest and

excessive force by either directing that conduct or ratifying it

after the fact.  (PSAC ¶ 54.)  Lynch bases those generalized

conclusions on the following allegations: (i) Lombardo was the

commander of the Strategic Response Group; (ii) he previously

displayed personal animus toward Lynch; (iii) he was present at

the precinct and denied Lynch food, water, and bathroom access;

and (iv) a memo entry in an officer's logbook states that

Lombardo and Mandy directed the officer to consult with Agency

Attorney Paverman about the arrest of a detainee named Vienna

Rye.[1]  (PSAC ¶¶ 51-54, 58.)   The Proposed Complaint alleges that

in light of the logbook entry about Rye, "it is very likely

that" Lombardo was "an integral participant" in preparing the

allegedly perjured summonses Mandy issued to Lynch.  (Id. ¶ 54.)

    As the Court of Appeals found with respect to the FAC, none

of the above allegations plausibly establishes that "Lombardo

was involved in the arrest of Lynch or in the preparation of the

---

[1]     The memo entry states: "As per PO Mandy & Cpt Lombardo a
consultation with Agency Attorney Paverman, Less was conducted
regarding . . . ," with the remaining text redacted for
attorney-client privilege.  (PSAC ¶ 17.)

Lynch Summonses, or that Mandy was among the officers supervised by Lombardo."  See Lynch v. City of N.Y., 952 F.3d 67, 77 (2d Cir. 2020).  The Proposed Complaint's new centerpiece allegation involves the logbook entry.  (See Pl. Ltr. at 4.)  But the logbook allegation shows only that Lombardo had a conversation with Mandy about a separate detainee (Vienna Rye) not a conversation about Lynch.  It therefore does not support a reasonable inference that Lombardo personally participated in Lynch's (as opposed to Rye's) arrest or in preparing the Lynch summons.  Because the Proposed Complaint fails to cure the defects in the claims against Lombardo, it would be futile, and leave to amend is denied as to the new Lombardo allegations.

### i.   Paverman

The Proposed Complaint also fails to remedy the FAC's shortcomings with respect to the claims against Paverman.  As to Paverman, the FAC principally alleged on information and belief that Paverman "possibly" "colluded" with Mandy regarding the summons issued to Lynch "to construct false allegations" to "justify [Lynch's] arrest."  (FAC ¶ 45.)  In affirming dismissal of the claims against Paverman, the Court of Appeals found that the FAC's "allegation of participation by Paverman was both conclusory and literally speculative, alleging only that Paverman 'colluded . . . possibly with Defendant Mandy.'"  Lynch, 952 F.3d at 78 (quoting FAC ¶ 45) (emphasis in original).

In the Proposed Complaint, Lynch attempts to cure these defects by including the allegations about the logbook entry, which, in Lynch's view, makes it "very likely"--as opposed to just "possibl[e]," as previously alleged in the FAC--that Mandy consulted with Paverman about "constructing false allegations against" Lynch.  (PSAC ¶ 20; see also id. ¶¶ 17-20; Pl. Ltr. at 3-5.)   As noted above, however, the logbook entry does not have anything to do with Lynch; it concerns Paverman's consultation with Mandy on a separate detainee.  Moreover, replacing the word "possibly" with "very likely" does not have the abracadabra effect Plaintiff apparently hopes to induce.  Even with that upgraded adjectival phrase, Plaintiff's allegations as to Paverman remain speculative and conclusory.  As with the Lombardo allegations, amending the claims against Paverman would be futile, and leave to amend is therefore denied.

## II.   **Motion to Bifurcate the Monell Claims**

Turning to Defendants' motions, they first seek to bifurcate Plaintiff's Monell claim against the City from the claims against the individual defendants.  Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b).  Rule 42(b) gives the court "discretion to order separate trials where such an order will further

convenience, avoid prejudice, or promote efficiency." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999). In light of that purpose, the Court of Appeals has observed that "bifurcation may be appropriate where, for example, the litigation of [one] issue might eliminate the need to litigate [a] second issue." Id.

The Court concludes that principles of judicial economy justify bifurcating the Monell claims. "[T]o establish liability against municipal defendants in a Monell claim, a plaintiff must prove both that he suffered a constitutional violation and that the constitutional harm suffered was a result of a municipal policy or custom." Brown v. City of New York, No. 13 Civ. 6912 (TPG), 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016). "Thus, since there is no finding of Monell liability without first finding a constitutional violation, in an effort to promote convenience and economy, courts in this circuit have bifurcated Monell claims and stayed their discovery until a plaintiff has succeeded in establishing liability on the part of the individual defendants." Id.; see also, e.g., Mineo v. City of New York, No. 09 Civ. 2261 (RRM) (MDG), 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) ("Courts in this Circuit favor bifurcating Monell claims.") (collecting cases).

Here, discovery on the Monell claims is likely to be expensive and time-consuming, and it will all be for naught if

Plaintiff fails to prove an underlying constitutional violation. Staging discovery and trial on the Monell claims after litigation of individual liability will avoid potentially wasting the litigants' and Court's time and resources. Plaintiff's arguments to the contrary, including his factually unsupported claim that that "evidence supporting the Monell claims will undergird the claims against the individual Defendants" (Pl. Ltr. at 5) is "insufficient to show that bifurcation is inappropriate."  See Aquino v. City of New York, No. 16 Civ. 1577, 2017 WL 2223921, at *3 (S.D.N.Y. May 19, 2017) (bifurcating Monell claim over the plaintiff's objection that "evidence that will be relevant to the claims against the municipality will also be relevant against the individual defendants").  The motion to bifurcate is therefore granted.

## III. **Motion to Stay**

In light of developments with the COVID-19 pandemic, Defendants moved to stay this action for 90 days, a request to which Plaintiff did not object.  (See Defendants' Letter dated Apr. 10, 2020 [dkt. no. 60] at 1, 5.)  Defendants made their request on April 10, 2020, which means the stay would have extended through July 9, which has already passed.  The request for a stay is therefore moot.

9

## IV.   Conclusion

To the extent they are not addressed above, the Court has considered the parties' remaining arguments and finds them unavailing.  Plaintiff's motion for leave to amend the FAC (dkt. nos. 57, 59) is DENIED.  Defendants' motion to bifurcate is GRANTED, and their motion for a 90-day stay is DENIED as moot. The parties shall confer and advise the Court by letter no later than July 21 on how they propose to proceed.  The Clerk of the Court shall close the open motion (dkt. no. 60).

SO ORDERED.

Dated:   July 14, 2020
         New York, New York

_____
LORETTA A. PRESKA, U.S.D.J.